# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:19-CV-00051-KDB-DCK

| | |
|---|---|
| EARTHKIND, LLC,<br><br>   Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>THE LEBERMUTH COMPANY INC.<br>and<br>ROBERT M. BROWN,<br><br>   Defendants/Counterclaim/Third-<br>   Party Plaintiffs,<br><br>v.<br><br>KARI WARBERG BLOCK,<br><br>   Third-Party Defendant. | **ORDER** |

**THIS MATTER** is before the Court on Defendants the Lebermuth Company Inc.'s ("Lebermuth") and Robert M. Brown's (collectively, "Defendants") motion to dismiss pursuant to the *forum non conveniens doctrine*, or in the alternative, to transfer the case pursuant to 28 U.S.C. § 1404(a) to the Northern District of Indiana. (Doc. No. 24). In this action, Plaintiff EarthKind, LLC ("EarthKind") alleges that Defendants breached their contractual obligations to supply a "fresh cab oil" product to EarthKind, tortuously misrepresented its ingredients, and committed related unfair trade practices. Defendants' motion to dismiss or transfer argues that EarthKind's claims arise out of a 2004 Confidentiality Agreement that contains a forum-selection clause requiring any action "arising out of the agreement" be brought in state court. As more fully discussed below, the Court will deny Defendants' motion because it finds that EarthKind's claims

1

do not arise out of the 2004 Confidentiality Agreement and, further, that Defendants' alternate request to transfer the case to the Northern District of Indiana should not be granted.

## I. FACTS & PROCEDURAL HISTORY

EarthKind, a Delaware company with its principal place of business in Bismarck, North Dakota, is a pest control developer, manufacturer, and supplier that specializes in creating natural, plant-based alternatives for pest prevention. (Doc. No. 1, ¶¶ 1, 8). Third-party defendant Kari Warberg Block is EarthKind's Chief Executive Officer and also a resident of Bismarck, North Dakota. (Doc. No. 8, ¶ 4). Defendant Lebermuth is an Indiana corporation that manufactures and supplies natural and organic essential oils, fragrances, and flavors with its principal place of business in South Bend, Indiana. *Id.* at ¶ 1. Its Chief Executive Officer, Robert M. Brown, is also a resident of Indiana. (Doc. No. 1, ¶¶ 9-10).

Ms. Block founded EarthKind after conceiving a safe and natural method to deter rodents from indoor and other enclosed areas using scents offensive to rodents. *Id.* at ¶ 14. To implement this method, EarthKind developed a product known as Fresh Cab®, which includes fresh cab oil (a scented oil that repels rodents but is not offensive to humans) and which EarthKind intended to market for sale to residential and commercial customers. *Id.*

EarthKind sought Lebermuth's assistance in developing the formula for fresh cab oil to be used in its products. *Id.* at ¶ 15. On November 11, 2004, as the parties began to discuss working together, Ms. Block signed a confidentiality agreement (the "2004 Confidentiality Agreement") on behalf of EarthKind. (Doc. No. 11). The 2004 Confidentiality Agreement states that the agreement applies to "all confidential propriety information disclosed by Lebermuth to [EarthKind] including . . . confidential information, knowledge or data concerning any product, apparatus, process, formula, manufacturing method, or manner of doing business including, but not limited to," the fresh cab

oil formula. (Doc. Nos. 11, at ¶ 1; 8, at ¶ 10; 21, at ¶ 10). The agreement also contains the following forum-selection clause:

> This Agreement shall be governed and construed in accordance with the laws of the State of Indiana without giving effect to its choice of laws provisions. The parties hereby agree that any action arising out of this Agreement shall be brought in the Superior or Circuit state court located in St. Joseph County, Indiana, and the parties hereby irrevocably consent to the jurisdiction and venue of the courts located in St. Joseph County, Indiana.

(Doc. No. 11, at ¶ 13).[1]

In 2005, EarthKind sent two of its contractors to work with Mr. Brown at Lebermuth over a period of several days to develop the fresh cab oil formula. (Doc. No. 1, at ¶ 16). Then, in 2006, EarthKind submitted an application for the registration of fresh cab oil to the Environmental Protection Agency ("EPA"). *Id.* at ¶ 21. In support of that application, EarthKind submitted two Confidential Statements of Formula ("CSFs") for the fresh cab oil. *Id.* at ¶¶ 21, 22. Mr. Brown signed these CSF's on Lebermuth's behalf before they were submitted to the EPA. *Id.* at ¶ 23. EarthKind alleges that it understood that all fresh cab oil supplied by Lebermuth would comply with these CSFs. *Id.*

EarthKind has a manufacturing facility and place of business in Mooresville, NC ("the Mooresville Facility"). *Id.* at ¶ 8. Beginning in 2014, Lebermuth shipped its fresh cab oil directly to the Mooresville Facility where EarthKind used it to manufacture its Fresh Cab® products. *Id.* at ¶ 31. According to EarthKind, Lebermuth repeatedly represented and warranted that the fresh

---

[1] EarthKind and Lebermuth also entered into two subsequent contracts which are substantively similar to the 2004 Confidentiality Agreement. The parties entered into Mutual Non-Disclosure Agreements on October 29, 2013 and March 20, 2017. (Doc. No. 24-1, at 3 n. 1); (Doc. No. 27, at 5). However, while these subsequent agreements contained choice of law provisions designating Indiana law, but they do not contain forum-selection clauses. *See* (Doc. Nos. 12, 13).

cab oil it was supplying to EarthKind complied with the CSFs as submitted to the EPA. *Id.* at ¶¶ 26-38.

EarthKind claims that it discovered in 2017 that the fresh cab oil supplied by Lebermuth did not comply with the CSFs and that the Defendants intentionally deviated from the CSFs. *Id.* at ¶¶ 4, 50-55. When EarthKind began to uncover the discrepancies in the fresh cab oil and the CSFs, EarthKind alleges that Defendants concealed, through deliberate misrepresentations and false documents, their non-compliance with the CSFs. *Id.* at ¶¶ 5, 50-59. EarthKind asserts that many of these alleged misrepresentations were directed to the Mooresville facility. *Id.* ¶¶ 37-38. EarthKind claims that because of Defendants' actions, it lost the value of the fresh cab inventory that it could no longer use and the cost of outdated products that it was forced to destroy. *Id.* ¶ 69.

On May 2, 2019, EarthKind filed its Complaint asserting (1) breach of contract against Lebermuth based on the contracts formed each time EarthKind submitted a purchase order to Lebermuth for fresh cab oil and Lebermuth shipped the oil to EarthKind along with an accompanying invoice, (2) breach of express warranty against Lebermuth based on the warranties created by Lebermuth's invoices, (3) fraud against Defendants based on representations by Defendants regarding the fresh cab oil's compliance with the CSFs, (4) negligent misrepresentation, and (5) unfair and deceptive trade practices. On June 18, 2019, Defendants filed a counterclaim against EarthKind and Ms. Block alleging that EarthKind breached the 2004 Confidentiality Agreement by disclosing to third parties the information provided pursuant to the agreement and by reverse engineering the information provided pursuant to the agreement.

Based on their contention that the entirety of the lawsuit arises out of the confidential information it provided to EarthKind and thus, is governed by the 2004 Confidentiality Agreement, including the forum-selection clause, Defendants moved the Court to dismiss this case pursuant to

the doctrine of *forum non conveniens* or, in the alternative, transfer the case to the Northern District of Indiana. (Doc. No. 24). EarthKind responded that the 2004 Confidentiality Agreement has nothing to do with its claims and was not meant to govern the parties' business relationship. EarthKind further argues that transfer to the Northern District of Indiana is not appropriate.

## II.  LEGAL STANDARD

### A. *Forum Non Conveniens*

Defendants move to dismiss EarthKind's claims under the doctrine of *forum non conveniens*, arguing that the case should be brought in Indiana state court pursuant to the 2004 Confidentiality Agreement's forum-selection clause. The Supreme Court in *Atlantic Marine* held that transfer pursuant to § 1404(a) is the prescribed enforcement mechanism of a forum-selection clause that "point[s] to a particular federal district." *Atl. Marine Contr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013). However, the doctrine of *forum non conveniens*, and not a Rule 12(b)(3) motion for improper venue, is the appropriate means for enforcement of a forum-selection clause that "point[s] to a state or foreign forum." *Id.* at 60.

"When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Constr. Co., Inc*, 571 U.S. at 63. Courts will generally honor the parties' "contract [to] confer jurisdiction and venue on a particular court . . . so long as it is not unreasonable." *Albermarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 649-50 (4th Cir. 2010). "Federal courts follow the federal law of contract interpretation to determine the scope of a forum-selection clause." *Valencell, Inc. v. Apple Inc.*, No. 5:16-cv-1-D, 2017 WL 491646, at *4 (E.D.N.C. Feb. 6, 2017); *Albermarle Corp.*, 628 F.3d at 650. "In doing so, a federal court must first determine if a particular forum-selection clause applies to a plaintiff's claims." *Valencell, Inc.*, 2017 WL 491646, at *4 (citing *Robinson v. Ladd Furniture,*

5

*Inc.*, 995 F.2d 1064, at *4 [published in full-text format at 1993 U.S. App. LEXIS 14252] (4th Cir. 1993) (per curiam) (unpublished table decision)); *see also John Wyeth & Brother Ltd.v. Cigna Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997).

Once a court determines that an enforceable forum-selection clause applies to the claims sought to be transferred, the burden of establishing that dismissal or transfer is unwarranted falls on the party that has defied the forum-selection clause. *See, e.g.*, *Atl. Marine Constr. Co.*, 571 U.S. at 63 (shifting the burden only after a valid forum-selection clause is found to apply to plaintiff's claims); *Queen City Pastry, LLC v. Bakery Tech. Enters., LLC*, No. 5:14-cv-143, 2015 WL 39327722, at *13 (W.D.N.C. June 26, 2015) (shifting burden once it found that the forum-selection clause applied to the suit). To overcome the presumption of enforceability, a party must present "a clear showing that [the forum-selection clause is] unreasonable under the circumstances." *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996). The Fourth Circuit has identified four circumstances where a forum-selection clause may be unreasonable:

> (1) [its] formation was induced by fraud or overreaching; (2) the complaining party "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) [its] enforcement would contravene a strong public policy of the forum state.

*Id.* at 928.

### B. Transfer under 28 U.S.C. § 1404(a)

In the alternative, Defendants move to transfer this case to the Northern District of Indiana under 28 U.S.C. § 1404(a). Even if proper venue exists under Section 1391(b), Section 1404(a) of Title 28 of the United States Code provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

6

28 U.S.C. § 1404(a). Section 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh, Corp.*, 487 U.S. 22, 29 (1988) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The burden is on the movant to show that transfer pursuant to Section 1404(a) is proper. *Sauer Brands, Inc. v. Duke Sandwich Products, Inc.*, No. 3:19-cv-00508, 2020 WL 90663, at **2-3 (W.D.N.C. January 7, 2020); *Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.*, 83 F. Supp. 2d 689, 696 (E.D. Va. 2000). In evaluating whether to transfer a case to another jurisdiction, the Court must weigh a number of factors to determine whether Defendants have met their burden to transfer venue. As the Court has previously stated,

> In considering a motion to transfer, a court should consider, among other things, [1] the plaintiff's initial choice of forum; [2] the residence of the parties; [3] the relative ease of access of proof; [4] the availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses; [5] the possibility of a view; [6] the enforceability of a judgment, if obtained; [7] the relative advantages and obstacles to a fair trial; [8] other practical problems that make a trial easy, expeditious, and inexpensive; [9] the administrative difficulties of court congestion; [10] the interest in having localized controversies settled at home [and] the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; [11] and the avoidance of unnecessary problems with conflict of laws.

*Commercial Equip. Co., Inc. v. Barclay Furniture Co.*, 738 F. Supp. 974, 976 (W.D.N.C. 1990). As with jurisdiction, "the analysis of these factors is qualitative, not merely quantitative." *Id.*

In seeking a discretionary transfer of venue, defendants "carr[y] a particularly heavy burden," as "[a] court should not disturb the plaintiff's choice of forum unless the moving party demonstrates that the balance of convenience to the parties and witnesses and the interests of justice weigh heavily in favor of the transfer to another district." *Id.* (citations omitted). The mere shifting of inconvenience from one party to another will not satisfy Defendants' burden. *Id.*; *see*

*also Uniprop Manufactured Hous. Cmtys. Income Fund II v. Home Owners Funding Corp.*, 753 F. Supp. 1315, 1322 (W.D.N.C. 1990) (noting that "if the equities lean but slightly in favor of the movant after all factors are considered," transfer is still not appropriate).

### III.    DISCUSSION

Defendants assert two arguments in support of their motion. First, they argue that EarthKind's claims arise out of the information Lebermuth provided to EarthKind pursuant to the 2004 Confidentiality Agreement. Second, in the event the Court does not enforce the forum-selection clause, Defendants ask that the Court transfer the case to the United States District Court for the Northern District of Indiana for the "convenience of the witnesses." (Doc. No. 24, at 1). Each of Defendants' arguments will be addressed in turn.

### A.  *Forum Non Conveniens*

To dismiss a case pursuant to an asserted forum-selection clause, the Court must first determine if the forum-selection clause applies to EarthKind's claims. As with any interpretation of a contract, the Court begins its analysis by looking to the plain language of the forum-selection clause in the 2004 Confidentiality Agreement, which states that it covers "any action arising out of" the agreement. (Doc. No. 11, ¶ 13). While Defendants urge an expansive application of this language, federal courts have repeatedly interpreted the scope of "arising out of" a contract more narrowly than language such as "relating to," "associated with," or "arise in connection with" a contract. *See, e.g.*, *Valencell*, 2017 WL 491646, at *6 (explaining that federal courts interpret "arising out of" or similar phrases in arbitration agreements to encompass causes of action that relate only to "the interpretation, performance, or non-performance of the underlying contract"); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 644 (1985)

(Stevens, J., dissenting) (distinguishing between the scope afforded by phrases "arise out of" and "in relation to"); *Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 389 (2d Cir. 2007).

EarthKind cites two cases that are particularly applicable to the forum-selection clause in this case. The first is *Valencell, Inc. v. Apple, Inc.* from the Eastern District of North Carolina. 2017 WL 491646. In *Valencell*, both parties signed a confidentiality agreement that contained a forum-selection clause. *Id.* at *3. As in this case, the forum-selection clause covered "any litigation arising out of" the agreement. *Id.* After the defendant allegedly used information exchanged under the confidentiality agreement signed by the parties, the plaintiff brought claims against the defendant for patent infringement and unfair and deceptive trade practices. *Id.* at *1. The defendant moved to transfer the case to federal court in California. *Id.* at *6. The court denied the motion, holding that the plaintiff's claims did not "arise out of" the confidentiality agreement and, therefore, were not subject to the agreement's forum-selection clause. *Id.* The court explained its reasoning further in a later opinion denying the defendant's motion for reconsideration: "Merely because the parties spoke with each other pursuant to a confidentiality agreement does not bring within the scope of an 'arising under' forum-selection clause any cause of action for which the facts include the parties' communications. Rather, to fall within the scope of an "arising under" clause, the cause of action must be based on the contract itself." *Valencell, Inc. v. Apple Inc.*, No. 5:16-cv-1-D, 2017 WL 2819768, at *6 (E.D.N.C. June 28, 2017).

EarthKind also cites to *Phillips v. Audio Active, Ltd.*, 494 F.3d 378 (2d Cir. 2007). In Phillips, the parties agreed to a forum selection clause that applied to any proceeding "arising out of" their contract. *Id.* at 382. The Second Circuit held that the plaintiff's federal copyright claims did not arise out of the contract between the parties, stating that it did not "understand that words 'arise out of' as encompassing all claims that have some possible relationship with the contract, including

9

claims that may only 'relate to,' be 'associated with,' or 'arise in connection with' the contract." *Id.* at 389. The court found that the plaintiff's copyright claims did not assert any rights or duties under the contract, and the plaintiff could bring his claims without any reference to the contract. *Id.* at 391-92.

Here, Defendants contend that EarthKind's allegations that Defendants made misrepresentations as to whether Lebermuth's product were in compliance with the formulas contained in the 2006 CSFs rely on the information provided by Lebermuth in 2005 pursuant to the 2004 Confidentiality Agreement. According to Defendants, EarthKind's claims concerning whether Lebermuth's current product matches the CSF are based on a comparison of the formula of the 2017 product to the 2005 formula provided under the 2004 Confidentiality Agreement. "Thus," Defendants claim, "the essence of EarthKind's claim arises out of the 2004 Confidentiality Agreement and the Court should enforce the forum-selection clause and dismiss the case." (Doc. No. 32, at 3-4). The Court disagrees.

EarthKind's Complaint does not reference the 2004 Confidentiality Agreement, nor do its claims rely upon or relate to any rights or obligations provided by the 2004 Confidentiality Agreement. Rather, EarthKind's contractual claims are based on the contracts allegedly formed each time EarthKind submitted a purchase order to Lebermuth for fresh cab oil and Lebermuth shipped the oil to EarthKind along with an accompanying invoice. Each of Lebermuth's signed invoices were accompanied by a "Certificate of Analysis" ("COA") that set forth the odor and physical characteristics of the fresh cab oil that was shipped. (Doc. No. 6, ¶ 28). Similarly, EarthKind's claims concerning the misrepresentations and omissions made by Defendants during the course of their relationship with EarthKind do not concern the 2004 Confidentiality Agreement. As the court stated in *Valencell*, merely because the parties may have spoken to each

other pursuant to a confidentiality agreement, that does not mean that any claim that arises between the parties from these communications must be governed by the agreement. *See also Yevak v. Nilfisk-Advance, Inc.*, 2016 WL 53833, at *8 (E.D. Pa. Feb. 11, 2016) (refusing to find that the plaintiff's claims were governed by the forum-selection clause in the employment agreement, noting that while "[t]he lawsuit does relate to Plaintiff's employment . . .[,] Plaintiff's employment is not the same thing as Plaintiff's employment agreement").

Moreover, the 2004 Confidentiality Agreement was never signed by Lebermuth—it was only signed by Ms. Block on behalf of EarthKind—and the 2004 Confidentiality Agreement was signed before EarthKind and Lebermuth even entered into a business relationship. This is evidenced by the provision in the agreement that states:

> Inquiring Party [EarthKind] and Lebermuth each agree that nothing contained in this Agreement shall be construed as a binding commitment to establish a business relationship. If the parties desire to establish a business relationship, such business relationship shall be set forth in a written contract signed by duly authorized representatives of both parties.

(Doc. No. 11, ¶ 17). The subsequent Mutual Non-Disclosure Agreements, unlike the 2004 Confidentiality Agreement and signed after the parties entered into a business relationship, do not contain a forum-selection clause. Had the 2004 Confidentiality Agreement been binding on the parties, these subsequent agreements would have been superfluous. The facts relating to the subsequent agreements, taken together, support the Court's holding that the 2004 Confidentiality Agreement's forum-selection clause is not binding as to EarthKind's claims in this action. Indeed, these facts also raise a question as to whether the parties intended for the contract to govern the

parties' entire ongoing business relationship. However, the Court need not answer that question because EarthKind's claims do not arise out of the 2004 Confidentiality Agreement regardless.[2]

Accordingly, the Court will deny Defendants' motion to dismiss EarthKind's Complaint pursuant to the doctrine of *forum non conveniens*.

### B. Transfer of Case Pursuant to 28 U.S.C. § 1404(a)

Defendants also argue that should the court determine that the forum-selection clause does not apply to EarthKind's Complaint, the Court should exercise its discretion to transfer this matter to the Northern District of Indiana pursuant to 28 U.S.C. § 1404(a). First, the Court notes that Defendants do not contend that venue in the Western District of North Carolina is improper (absent their *forum non conveniens* argument), and the Court finds no reason as to why venue in this district would be improper. A substantial part of the events giving rise to EarthKind's claims occurred in this district, including EarthKind's orders being fulfilled in this district and Lebermuth's shipments of its products to this district. *See* 28 U.S.C. § 1391(b)(2) (providing that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred").

Next, the Court must determine if this action could have been brought in the Northern District of Indiana. The Court finds that this action could have been brought in the requested transferee district because all defendants reside in the Northern District of Indiana. *See* 28 U.S.C. § 1391(b)(1) ("A civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located.").

---

[2] The only claim in this action that arises out of the 2004 Confidentiality Agreement is Defendants' counterclaim for breach of the agreement. However, a defendant may not assert a counterclaim arising under a contract with a forum-selection clause as a means of defeating the court's jurisdiction over the plaintiff's claims. *See Tri-State Energy Solutions, LLP v. KVAR Energy Sav., Inc.*, No. 08-209-JJF, 2008 WL 5245712, at *25 (D. Del. Dec. 16, 2008).

Having found that the suit could have been brought in the transferee court, the Court turns to the eleven factors previously illustrated by this Court to decide whether the matter should be transferred.

   *1. Plaintiff's Initial Choice of Forum*

EarthKind chose to bring this action in the Western District of North Carolina. This choice receives less weight, however, if (1) the plaintiff chooses a foreign forum, or (2) the cause of action bears little or no relation to the chosen forum. *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984). While the Western District of North Carolina is not EarthKind's home district, the causes of action asserted by EarthKind bear a substantial relation to the chosen forum and to its Mooresville Facility. Accordingly, EarthKind's choice of forum must be given great weight in considering a transfer of venue.

   *2. Residence of the Parties*

While Defendants' are located in the Northern District of Indiana, EarthKind has facilities in North Dakota and in the Western District of North Carolina. Thus, this factor is neutral.

   *3. Relative Ease of Access to Sources of Proof*

Defendants assert that this factor is neutral, claiming that the "location of relevant documents and the relative ease of access to sources of proof should be equally available in both districts." (Doc. No. 24-1, at 11). EarthKind does not dispute that this factor is neutral.

   *4. Availability of Compulsory Process for Attendance of Unwilling Witnesses and Costs of Obtaining Attendance of Willing Witnesses*

Defendants claim that the Northern District of Indiana is more convenient for the majority of witnesses. EarthKind does not dispute that Indiana "may be more convenient for Lebermuth's employees," but asserts that the Western District of North Carolina is more convenient for

EarthKind's employees in the Mooresville, North Carolina facility. Thus, this factor does not favor either party.

5. *The Possibility of a View*

While the Northern District of Indiana would be more convenient for a view of Lebermuth's facilities, the Western District of North Carolina would be more convenient for a view of EarthKind's Mooresville Facility. Defendants claim that this factor favors transfer, but they do not assert that a view of Lebermuth's facilities is required. Additionally, EarthKind claims that "[t]here is no reason that either Lebermuth's facility in Indiana or EarthKind's facility in Mooresville would need to be viewed." (Doc. No. 27, at 14).

6. *The Enforceability of a Judgment, if Obtained*

A judgment obtained in either the Western District of North Carolina or the Northern District of Indiana would be enforceable nationwide. The parties do not dispute that this factor is neutral.

7. *The Relative Advantages and Obstacles to a Fair Trial*

Both parties agree that this factor is neutral.

8. *Other Practical Problems that Make a Trial Easy, Expeditious, and Inexpensive*

EarthKind argues that this factor weighs against transfer because counsel has already been litigating this action in the Western District and neither parties' counsel is admitted to practice in the Northern District of Indiana.

9. *The Administrative Difficulties of Court Congestion*

Defendants claim that this factor is neutral. EarthKind asserts that this claim weighs against transfer and cites to Federal Case Management Statistics which show that the Western District of North Carolina has less pending cases overall, less pending cases per judge, and less median time from filing to disposition of civil cases than the Northern District of Illinois.

14

*10. Interest in Having Localized Controversies Settled at Home and Having Trial in Forum of State Law to be Applied*

Defendants assert that the Northern District of Indiana is more convenient because Lebermuth's manufacturing operations, documents, and witnesses are in Indiana. Further, Defendants contend that all contracts with EarthKind are governed by Indiana law and that the Northern District of Indiana is better suited to apply Indiana law. EarthKind argues that this action concerns North Carolina just as much as, if not more than, it concerns Indiana. EarthKind also alleges that Indiana law does not apply to its claims, but rather North Carolina law applies. The Court need not decide what law to apply at this time because even if Indiana law were found to apply, Defendant has not shown that this Court would have any difficulty in applying Indiana law. Also, while this factor might weigh in favor of transfer if Indiana law were to apply, it would still not be enough to overcome the other factors that weigh in favor of venue in the Western District of North Carolina.

*11. Avoidance of Unnecessary Problems with Conflicts of Laws*

The parties agree that this factor is neutral.

In sum, few factors weigh in favor of transfer of this matter. While a transfer to the Northern District of Indiana may be more convenient for Defendants, transferring venue is not appropriate where doing so "would simply shift the inconvenience from one party to another." *Tools USA & Equip. Co. v. Champ Frame Straightening Equip., Inc.*, 841 F. Supp. 719, 721 (M.D.N.C. 1993). Thus, giving deference to EarthKind's choice of forum and finding no compelling grounds to transfer the action in the interests of justice, the Court declines to transfer this action to the Northern District of Indiana.

## IV. ORDER

**IT IS THEREFORE ORDERED** that Defendants' Forum Non Conveniens Motion to Dismiss or in the Alternative, Motion to Transfer Pursuant to 28 U.S.C. § 1404(a), (Doc. No. 24), is **DENIED**.

Signed: April 9, 2020

Kenneth D. Bell
United States District Judge